STATE, Respondent, v. GREENE, Appellant.

*No. State 70. Argued September 4, 1968.—Decided October 1, 1968.*
(Also reported in 161 N. W. 2d 239.)

For the appellant there was a brief by *James M. Shellow* and *Shellow, Shellow & Coffey*, all of Milwaukee, and oral argument by *James M. Shellow*.

For the respondent the cause was argued by *David J. Cannon*, district attorney of Milwaukee county, with

whom on the brief was *Bronson C. La Follette,* attorney general.

WILKIE, J. The initial issue presented on this appeal is whether defendant's motion of April 6, 1966, to dismiss on the grounds of a defective warrant under *State ex rel. White v. Simpson* [1] was timely.

In *State ex rel. La Follette v. Raskin* [2] this court spoke directly to the issue of the applicability of *State ex rel. White v. Simpson* to facts similar to those presented here. The court stated that:

". . . a motion to the circuit court on *White* grounds after the bindover but before the arraignment would appear to be timely if made before or contemporaneously with a motion to dismiss on the ground that the evidence adduced at the preliminary is insufficient to support a bindover." [3]

In that opinion we stated that to be timely the defendant must move for a dismissal on the ground of a defective warrant "at the earliest opportunity that he appears in the trial court." [4]

". . . By moving to dismiss because of lack of evidence, the defendant has himself invoked the jurisdiction of the court and should be required to make his motion to dismiss (on *White* grounds) either before or at such time." [5]

In the present case the motion to dismiss on *White* grounds was made nearly four months after the motion for dismissal on the ground of lack of evidence. Following *Raskin* we hold that the motion on the claimed defective warrant was not timely and we therefore sustain the decision of the lower court denying that motion.

Reaching appellant's appeal on the merits of the conviction, he does not quarrel with the sufficiency of proof

---

[1] (1965), 28 Wis. 2d 590, 137 N. W. 2d 391.

[2] (1966), 30 Wis. 2d 39, 139 N. W. 2d 667.

[3] *Id.* at page 47.

[4] *Id.* at page 48.

[5] *Id.*

of the sale but rather asserts that the jury could only speculate that the substance sold was marijuana and that it was being sold for smoking purposes.

Sec. 161.275 (1), Stats., *inter alia,* prohibits the *sale* of marijuana for smoking or beverage purposes. Sec. 161.275 (3), *inter alia,* prohibits the *use* of marijuana for such purposes. But neither section nor other statute defines the word "marijuana."

Ch. 161, Stats., pertains to narcotics and sec. 161.01 (14) includes *cannabis* as a narcotic drug, while sec. 161.01 (13) defines *cannabis* as *Cannabis sativa L. Cannabis indica* is denoted a poisonous substance by sec. 151.10 (1). The sale of *Cannabis indica* contrary to the regulations of sec. 151.10 (1) permits the imposition of a fine of not less than $100 nor more than $1,000, or imprisonment of not less than one nor more than five years.

The trial court and counsel agreed that marijuana as used in sec. 161.275 (1), Stats., meant *Cannabis sativa L.* and instructed the jury accordingly. This being so it was necessary for the state to prove that the substance sold to the police officer was *Cannabis sativa L.*

The chief chemist for the city of Milwaukee testified for the state that he had subjected the substance in question to various tests as prescribed in Publication No. 341, revised February, 1960, published by the United States Treasury Department, Internal Revenue Service, prepared by the Bureau of Narcotics. According to the witness, these tests revealed that the substance in question was marijuana. He further testified that the prescribed tests were specific for marijuana and that according to the government publication marijuana was *Cannabis sativa L.*

Applying our usual standard of review on the question of the sufficiency of evidence to support a jury finding

in a criminal conviction,[6] a majority of the court is satisfied that this evidence supports the finding that the substance sold was *Cannabis sativa L.*

A minority of the court, Mr. Justice HEFFERNAN and the writer of this opinion, concludes that as a matter of law there is a reasonable doubt as to the identity of the substance sold and that, therefore, the state did not meet its burden of proof that the substance was *Cannabis sativa L.* The chemist was unable to say whether the tests distinguished *Cannabis sativa L.* from *Cannabis indica.* Thus, the question unanswered by any evidence is whether the test used by the city chemist would produce a positive result if *Cannabis indica* or some other compound were being tested. This doubt is raised by the testimony of a professor of chemistry (Dr. Robert Splies) who testified for the defense that the testing method used by the city chemist was not specific for *Cannabis sativa L.* and that other substances would give a positive result. He also stated that there were more specific tests than those used by the city chemist.

Sec. 161.275 (1), Stats., requires that the state prove that the sale was made for smoking or beverage purposes. At oral argument the state conceded that sec. 161.275 (1) cannot benefit from the presumption created in sec. 161.275 (3), which provides in part that:

". . . The possession of marijuana or hemp or the leaves or seeds thereof in a form suitable for smoking shall be prima facie evidence that it is intended for smoking purposes."

Notwithstanding that no such presumption existed in the instant case, the trial court, when defense counsel

---

[6] *State v. Clarke* (1967), 36 Wis. 2d 263, 153 N. W. 2d 61; *Lock v. State* (1966), 31 Wis. 2d 110, 142 N. W. 2d 183; *State v. Stevens* (1965), 26 Wis. 2d 451, 132 N. W. 2d 502; *State v. Johnson* (1960), 11 Wis. 2d 130, 104 N. W. 2d 379; *Parke v. State* (1931), 204 Wis. 443, 235 N. W. 775.

argued that the state had not shown any evidence to support the element of the crime requiring that the sale be made for smoking purposes, concluded that there was sufficient evidence to permit a jury to determine this issue beyond a reasonable doubt. The following colloquy took place:

"Mr. Shellow: They haven't shown anything about the seller at all.

"The Court: Except under the circumstances of the total conversation and the total circumstances there can be inferences circumstantially that can be raised, in combination with the testimony of Mr. Harrer [city chemist] and the total picture and the form of the weed itself that was dispensed, and the terminology in connection therewith that impart to it the flavor of the kind of contraband that is prohibited."

Although there is some dispute as to the detailed circumstances surrounding the sale there is evidence that at one gasoline station Greene told the police officer to whom he eventually made the sale that Greene could get the stuff, meaning marijuana; that the officer went to another gasoline station at Greene's request; that Greene showed up at that station and asked the officer if he had the money; the officer replied, "Yes, have you got the stuff?"; and that thereupon Greene in exchange for $10 handed the police officer a folded newspaper containing the marijuana.

A majority of the court agrees with the trial court that all reasonable inferences point to a sale that was made for "smoking purposes." A minority of the court, Mr. Justice HEFFERNAN and the writer of this opinion, believes that a reasonable doubt as to this element of the crime was raised under these circumstances when considered in conjunction with testimony that nothing was said at any time regarding the purpose of the sale and with other testimony that the marijuana being de-

livered was in a form suitable for confection as well as smoking purposes.

*By the Court.*—Judgment affirmed.